Neama Rahmani, Esq. (State Bar No. 223819)
H. Dean Aynechi, Esq. (State Bar No. 292229)
**WEST COAST TRIAL LAWYERS, APLC**
350 South Grand Avenue, Suite 3350
Los Angeles, California 90071
Telephone: (213) 927-3700
Facsimile: (213) 927-3701
filings@westcoasttriallawyers.com

Kaveh Navab (State Bar No. 280235)
**NAVAB LAW, APC**
13160 Mindanao Way, Suite 280
Marina del Rey, California 90292
Telephone: (310) 826-1002
NavabLaw@gmail.com

Attorneys for Plaintiff
J.K.J, by and through his guardian-ad-litem, Jeremy Hillyer

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

Case No. **'19 CV 2123 CAB RBB**

J.K.J, individually, and successor in interest to the Deceased, ALEAH JENKINS, by and through his guardian-ad-litem, JEREMY HILLYER,

                Plaintiff,

vs.

CITY OF SAN DIEGO, a public entity; DAVID NISLET, in his individual capacity and official capacity as Police Chief of the San Diego Police Department; NICHOLAS CASICOLA, an individual; JASON TAUB, an individual; LAWRENCE DURBIN, an individual; and DOES 1-10, inclusive,

                Defendants.

**COMPLAINT FOR DAMAGES**

1. Unreasonable Search and Seizure-Detention and Arrest (42 U.S.C § 1983)
2. Unreasonable Search and Seizure— Denial of Medical Care (42 U.S.C. § 1983)
3. Municipal Liability for Unconstitutional Custom, Practice, or Policy-(42 U.S.C. § 1983)
4. Deprivation of Life Without Due Process (42 U.S.C. § 1983)
5. Negligence (Wrongful Death)
6. Failure to Summon Immediate Medical Care (Violation of California Government Code § 845.6)

**DEMAND FOR JURY TRIAL**

## **COMPLAINT FOR DAMAGES**

J.K.J, individually and as a successor in interest to DECEDENT for his Complaint against Defendants CITY OF SAN DIEGO, DAVID NISLET, in his individual capacity and official capacity as Police Chief of the San Diego Police Department; NICHOLAS CASICOLA, an individual; JASON TAUB, an individual; LAWRENCE DURBIN, an individual; and DOES 1-10, inclusive, alleges as follows:

## **INTRODUCTION**

1.    This civil rights action seeks compensatory and punitive damages from DEFENDANTS City of San Diego, David Nislet (Police Chief for the San Diego Police Department), Nicholas Casicola, Jason Taub, and Lawrence Durbin, and Doe Officers  for violating various rights under the United States Constitution and state law in connection with the tragic and wrongful death of Plaintiff's mother, Aleah Mariah Jenkins ("DECEDENT"), on December 6, 2018.

2.    DEFENDANT CITY OF SAN DIEGO ("CITY") has failed to impose adequate discipline on its officers who committed different types of violation under the United States Constitution and state laws, creating a culture of impunity within the San Diego Police Department that encourages such violence and incidents of Constitutional violations against the public.

3.    DEFENDANT CITY by summarily rejecting Plaintiff's claim for damages have proved unwilling to accept responsibility for the wrong committed by its officers. The City continues to violate its citizen's rights by ignoring the allegations and preventing these incidents from happening.

4.    DEFENDANTS DOES 1-5 ("DOES 1-5") are directly liable for Plaintiff's injuries under federal law pursuant to 42 U.S.C. § 1983 and state law.

5.    DEFENDANT CITY and DOES 6-10 ("Does 6-10") also proximately caused Plaintiff and Decedent's injuries and are liable under state and federal law, the doctrine of vicarious liability, and under principles set forth in *Monell v. New York*

1  *City Department of Social Services*, 436 U.S. 658 (1978).

2      6.      The policies and customs behind falsely arresting, and failing to provide

3  medical attention, negligence and other wrongdoing under the Constitution and State

4  laws toward citizens like Plaintiff and Decedent are fundamentally unconstitutional

5  and constitute a menace of major proportions to the public. Accordingly, insofar as

6  Plaintiff herein seeks by means of this civil rights action to hold accountable those

7  responsible for these violations and to challenge the CITY's unconstitutional policies

8  and practices, this civil rights action is firmly in the public interest.

9

10                      **VENUE AND JURISDICTION**

11      7.      Venue is proper in this District because the underlying acts, omissions,

12  injuries and related facts and circumstances giving rise to the present action occurred

13  in this District.

14      8.      This Court has jurisdiction over Plaintiff's federal claims under 42

15  U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331 and 1334. Plaintiff further invokes

16  pendant jurisdiction of this Court to consider the claims arising under state law.

17

18                            **PARTIES**

19      9.      Decedent Aleah Mariah Jenkins was, at all times relevant to this action,

20  an individual residing in San Diego County, California.

21      10.      Plaintiff J.K.J ("Plaintiff") is an individual residing in San Diego County,

22  California and is the natural born child of DECEDENT.  J.K.J sues in his individual

23  capacity as the child of DECEDENT and as a successor-in-interest to DECEDENT

24  pursuant to California Code of Civil Procedure § 377.60 (a). J.K.J, by and through his

25  guardian-ad-litem, Jeremy Hillyer**.**  J.K.J seeks both survival and wrongful death

26  damages under federal and state law.

27      11.      Plaintiff is informed and believes that Defendant CITY OF SAN DIEGO

28  ("CITY") is and was a duly organized public entity, form unknown, existing as such

-3-

under the laws of the State of California. At all relevant times, CITY was the employer of all named Defendants and DOES 1 through 10 who are CITY Police Officers and are sued in their individual capacity for damages only.

12. Plaintiff is informed and believes that DEFENDANT NICHOLAS CASCIOLA (hereinafter "Casciola") is an individual living in the County of San Diego, California. At all relevant times, Casciola was the employee and agent of Defendant CITY and was acting under color of law within the course and scope of his respective duties as a police officer and with complete authority and ratification of his principal Defendant CITY.

13. Plaintiff is informed and believes that DEFENDANT JASON TAUB (hereinafter "Taub") is an individual living in the County of San Diego, California. At all relevant times, Taub was the employee and agent of Defendant CITY and was acting under color of law within the course and scope of his respective duties as a police officer and with complete authority and ratification of his principal Defendant CITY.

14. Plaintiff is informed and believes that DEFENDANT LAWRENCE DURBIN (hereinafter "Durbin") is an individual living in the County of San Diego, California. At all relevant times, Durbin was the employee and agent of Defendant CITY and was acting under color of law within the course and scope of his respective duties as a police officer and with complete authority and ratification of his principal Defendant CITY.

15. Plaintiff is informed and believes that DEFENDANT DAVID NISLET (hereinafter "NISLET") is an individual living in the County of San Diego, California. At all relevant times, Casciola was the employee and agent of Defendant CITY and was acting under color of law within the course and scope of his respective duties as a police officer and Chief of Police for the City of San Diego and with complete authority and ratification of his principal Defendant CITY.

16. At all relevant times, Defendant DOES 1-10 were duly authorized

employees and agents of the CITY, who were acting under color of law within the course and scope of their respective duties as employees of the CITY and with the complete authority and ratification of their principal, Defendant CITY.

17.     At all times mentioned herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every defendant herein.

18.     The true identities of Defendant DOES 1-10, are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names.  Plaintiff will seek leave to amend this complaint to show the true names and capacities of these Defendants when they have been ascertained.   Each of the fictitious named Defendants is responsible in some manner for the conduct and liabilities alleged herein.

19.     In doing the acts and failing and omitting to act as hereinafter described, Defendant DOES 1-10 were acting on the implied and actual permission and consent of CITY.

20.     All Defendants who are natural persons, including DOES 1-10, are sued individually and/or in his/her official capacity as officers, sergeants, captains, commanders, supervisors, and/or civilian employees, agents, policy makers, and representatives for the CITY.

21.     Defendants CITY and DOES 1-10 are liable for Plaintiffs' injuries under California law and under the doctrine of *respondeat* superior. Liability under California law for public entities and public employees is based upon California Government Code §§ 815.2 and 820.

22.     On May 9, 2019, Plaintiff filed comprehensive and timely claims for damages with the City of San Diego and the County of San Diego pursuant to applicable sections of the California Government Code.

23.     On May 23, 2019, the County of San Diego rejected these claims pursuant to a formal letter.

24.     On August 1, 2019, the City of San Diego denied said claims pursuant to a formal letter.

## **FACTUAL ALLEGATIONS**

25.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 24 of this Complaint with the same force and effect as if fully set forth herein.

26.     Decedent Aleah Mariah Jenkins sustained injuries, including but not limited to pain and suffering, loss of enjoyment of life, and death when she was denied medical care while under the complete control and custody of Defendants Casciola, Taub, Durbin and Does 1 through 5 who were acting under color of law as employees of the City as Police Officers for San Diego Police Department.

27.     On November 27, 2018, Decedent was the backseat passenger in a vehicle pulled over by Defendants Casciola, Taub and Durbin for having an expired registration.

28.      Decedent while seated in the back of the pulled over vehicle was asked questions by Defendants Casciola, Taub and Durbin to which she complied and provided answers to. At this point in time, Decedent was responsive and seated upright in the back of the vehicle. Decedent, based on the information known to Defendants Casciola, Taub and Durbin, had committed no crime at this point, was not resisting and was following orders and fully compliant with all questions. Decedent complied with Defendants Casciola, Taub and Durbin's request that she be handcuffed, and she gave permission to the Defendant Officers to search her and her belongings.

29.     Defendants Casciola, Taub and Durbin proceeded to search the vehicle while all the occupants, including Decedent, were handcuffed and detained either in a patrol car or on the street. At one point, one of the Defendant Officers told Decedent, she could say goodbye to the other occupant of the vehicle after being handcuffed because she had been "straight up" with them.

30.     Once Decedent was sitting in the police car, she began vomiting.  One of the involved Defendant Officers asked her if she was "withdrawing" right now and tells her to stick her head out of the vehicle. Decedent then tells the Defendant Durbin who was standing above her that she is sick and that she is pregnant. Defendant Durbin then says to one of the other Defendant Officers "don't worry about it".

31.     Despite clear signs that Decedent needed medical attention at this point, as evident from her vomiting on herself, saying she was sick and pregnant, and obvious signs of physical distress Defendant Durbin, while standing above her, never summons medical care or attempts to assess what is causing her vomit or become sick.

32.     While Decedent is in clear distress and has vomit on her, the Defendant Durbin standing above her states that because she had once been arrested on her twin sister's warrant, he needed to take her downtown to police headquarters for fingerprinting. Covered in her own vomit, Decedent asked for a napkin and some water, to which Defendant Durbin responds that he had nothing and that he would get her some water once they got to the watch commander.

33.     Defendants Casciola, Taub and Durbin lacked probable cause to arrest Decedent, who based on the information known to the officers at the time, had committed no crime.

34.     Instead of taking Decedent to the hospital or summoning medical attention, Defendant Durbin then closed the back door of the patrol vehicle, where Decedent was seated with vomit on her, and without placing her seat belt on her, proceeded to take her to the Downtown Police Headquarters.

35.     As Decedent and Defendant Durbin drove downtown, Decedent continued to groan, grumble, and utter barely audible sentences.  Decedent repeatedly complained of feeling hot and ill and asked Defendant Durbin for water several times to no avail.  Decedent was visibly in distress and repeatedly asked for "help" while

handcuffed in the back seat. Indeed, at some point in the car ride Decedent begins screaming in distress and repeatedly says, "Please, help me!"

36. During the over one-hour drive from La Jolla to the Downtown Police Headquarters, Decedent's condition continued to deteriorate, and she displayed obvious signs of extreme physical distress and needed medical attention. Each time she either displayed clear physical signs of distress or screamed for help, Defendant Durbin ignored her repeated pleas for help and dismissed them.

37. Defendant Durbin informed Decedent that they were stuck in traffic and the drive was going to take some time. Defendant Durbin also passed by at least three ambulances during this drive but failed to stop and seek any medical care for Decedent, despite her repeated cries for help. Decedent continued to scream and moan throughout the entirety of the drive, but her explicit calls for help were repeatedly ignored by Defendant Durbin.

38. As Decedent's groans and screams became louder and she was making abnormal breathing noises, Defendant Durbin began to ask her "What's going on?" and "What are you doing?" but still failed to summon medical attention or address any of the clear signs of distress.

39. At some point in the drive, Defendant Durbin got out of the car to reprimand Decedent. Decedent responded that she was sick, and Defendant Durbin told her to knock it off. Decedent exclaimed several times, "Help, me please. Help me," to which Defendant Durbin merely responded, "You're fine," and asked her again, "What's going on?" Decedent, who was in handcuffs was laying in the back seat and when Defendant Durbin opened the door part of her body fell out of the door, demonstrating that she was in clear distress, yet Defendant Durbin deliberately ignored the obvious signs of distress before him and pushed her body back into the back seat and slammed the vehicle door on her.

40. Despite Decedent's clear pleas for help and obvious signs of distress, Defendant Durbin made the deliberate and intentional choice to ignore Decedent's

pleas. Indeed, at no point during the over one-hour drive did Defendant Durbin summon medical care, request assistance from other officers, inform dispatch that Decedent may need medical attention, and/or take Decedent to any number of hospitals on the route.

41.    At the station, Decedent continued to be in extreme and unrelenting distress. Upon arriving at the station and opening the back door, Decedent was laying unresponsive on the seat handcuffed. Decedent begins screaming for help, Defendant Durbin said to her "Stop hyperventilating. You're doing that to yourself." Defendant Durbin accused Decedent of "faking it" and told her it could lead to another charge if she continued to "resist."

42.    Defendant Durbin then pulls Decedent out of the car, lays her on the ground in the station. Despite clear signs of medical distress and Decedent's unresponsiveness Defendant Durbin takes her fingerprints while she is on the ground, and then Defendant Durbin put Decedent back into the police car. Defendant Durbin still refused to provide Decedent with medical attention even when they were at the police station.

43.    When Defendant Durbin returned to check on Decedent after some time had passed, he covered his hand over his body camera. Only at this point, after Decedent was no longer breathing, did Defendant Durbin finally summon medical attention and then said, "I can't tell if she is breathing or not."

44.    Decedent proceeded to go into a coma and died on December 6, 2018. Defendant Durbin ignored hours of warning signs that Decedent was in need of medical attention, and deliberately ignored Decedent's cries for help. Decedent was in Defendant Durbin's custody, and in handcuffs, in the back seat of a locked police cruiser, and had no ability to provide or seek her own medical care.

45.    As a result of Defendants' conduct, Decedent experienced profound pain and suffering, emotional distress, and mental anguish, and incurred medical expenses.

As a result of Defendants' conduct, Decedent ultimately lost her life and the enjoyment of her life.

46.    During the nearly two hours that Decedent was in custody of Defendants Casciola, Taub and Durbin, Decedent exhibited obvious and clear signs and symptoms of distress, possible intoxication and overdose, and/or other injury. Defendants Casciola, Taub and Durbin are reasonably trained that any such conditions required immediate medical attention, and the simple step of summoning medical attention or transporting Decedent to a hospital would not have been contrary to any legitimate police interests. As such, the deliberate actions of Defendants Casciola, Taub and Durbin unreasonably denied and delayed medical assistance to Decedent, and Defendants Casciola, Taub and Durbin were recklessly and deliberately indifferent to Decedent's serious medical needs. Moreover, Defendants Casciola, Taub and Durbin actions of failing to summon any medical attention when faced with clear signs and symptoms of distress were not objectively reasonable.   Had Defendants Casciola, Taub and Durbin summoned medical attention in time, Decedent would not have died.

47.    Decedent's right to medical care once in custody was clearly established at the time of the alleged violations, and it was not objectively reasonable for Defendants Casciola, Taub and Durbin to believe that their actions did not violate the law. "[A] right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violated that right." *Serrano v. Francis*, 345 F. 3d 1071, 1077 (9th Cir. 2003) (quoting *Anderson v. Creighton*, 438 U.S. 635, 640 (1987)). A reasonable officer would have known that ignoring serious signs of medical distress would violate Decedent's constitutional rights.

48.    As a result, Plaintiff has been deprived of love, companionship, comfort, care, assistance, protection, affection, society, and moral support of Decedent, and

1  will continue to be so deprived for the remainder of his natural life.  Plaintiff is also

2  claiming funeral and burial expenses and a loss of financial support.

3

4  **FIRST CAUSE OF ACTION**

5  **Unreasonable Search and Seizure—Detention and Arrest (42 U.S.C. § 1983)**

6  **(Against Defendants Casciola, Taub and Durbin and DOES 1-5)**

7         49.     Plaintiff repeats and re-alleges each and every allegation in paragraphs

8  1-48 of this Complaint with the same force and effect as if fully set forth herein.

9         50.     Defendants Casciola, Taub and Durbin as individuals and agents of

10  Defendant CITY, detained Decedent without reasonable suspicion, arrested and

11  detained Decedent without probable cause in violation of her right to be secure in her

12  person against unreasonable searches and seizures as guaranteed to her under the

13  Fourth Amendment to the United States Constitution and applied to state actors by

14  the Fourteenth Amendment. Defendants Casciola, Taub and Durbin detained

15  Decedent without reasonable articulable suspicion, arrested her without a warrant or

16  probable cause, and seized her in an unreasonable manner.

17         51.     The conduct of the Defendants Casciola, Taub and Durbin was willful,

18  wanton, malicious and done with reckless disregard for the rights and safety of

19  Decedent, and therefore warrants the imposition of exemplary and punitive damages

20  as to Defendants Casciola, Taub and Durbin

21         52.     As a result of the conduct of Defendants they are liable for Decedent's

22  and Plaintiff's injuries, either because they were integral participants in the wrongful

23  detention and arrest, or because they failed to intervene to prevent these violations.

24         53.     Decedent was detained without reasonable suspicion and arrested

25  without probable cause. At the time of his detention and arrest by Defendants

26  Casciola, Taub and Durbin Decedent was in full compliance with the officers'

27  requests, and the only reason given to Decedent for her arrest was because she had

28

-11-
COMPLAINT FOR DAMAGES

once been arrested on her twin sister's warrant, he needed to take her downtown to police headquarters for fingerprinting.

54.     As a result, Plaintiff has been deprived of love, companionship, comfort, care, assistance, protection, affection, society, and moral support of Decedent, and will continue to be so deprived for the remainder of his natural life.  Plaintiff is also claiming funeral and burial expenses and a loss of financial support.

55.     Accordingly, Defendants Casciola, Taub and Durbin are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks reasonable attorneys' fees under this claim. Plaintiff further seeks survival damages under this claim as a successor-in-interest to Decedent. Plaintiff also seeks wrongful death damages under this claim.

## SECOND CAUSE OF ACTION

**Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**

**(Against Defendants Casciola, Taub and Durbin and DOES 1-5)**

56.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 56 of this Complaint with the same force and effect as if fully set forth herein.

57.     Defendants Casciola, Taub and Durbin and Does 1-10 unreasonably denied and delayed medical assistance to Decedent. The denial of medical care by Defendants Casciola, Taub and Durbin deprived Decedent of her right under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.  Decedent was under the custody and control of Defendants Casciola, Taub and Durbin, with no ability to provide for herself.

58.     Defendants Casciola, Taub and Durbin and Does 1-5 are liable because they were integral participants in these violations or failed to intervene to prevent these violations.

59.     As a result. Decedent suffered extreme pain and suffering, incurred medical expenses, and eventually lost her life and the enjoyment of her life.

60.     The conduct of Defendants Casciola, Taub and Durbin was willful, wanton, malicious and done with reckless disregard for the rights and safety of Decedent, and therefore warrants the imposition of exemplary and punitive damages as to Defendants Casciola, Taub and Durbin.

61.     Defendant Defendants Casciola, Taub and Durbin knew or should have known that failure to provide timely medical treatment to Decedent could result in injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing Decedent great bodily harm and an agonizing death.

62.     As a result, Plaintiff has been deprived of love, companionship, comfort, care, assistance, protection, affection, society, and moral support of decedent, and will continue to be so deprived for the remainder of his natural life.  Plaintiff is also claiming funeral and burial expenses and a loss of financial support.

63.     Accordingly, Defendants Casciola, Taub and Durbin are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks reasonable attorneys' fees under this claim. Plaintiff further seeks survival damages under this claim as a successor-in-interest to Decedent. Plaintiff also seeks wrongful death damages under this claim.

## THIRD CAUSE OF ACTION

**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

**(Against Defendants CITY, NISLET and DOES 5-10)**

64.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 63 of this Complaint with the same force and effect as if fully set forth herein.

65.     Based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), on and for some time prior to November 27, 2018 (and continuing to the present date), Defendants CITY and Nislet deprived Decedent and Plaintiff of the rights and liberties secured to them by the Fourth and Fourteenth Amendments of the United States Constitution, in that said

Defendants acting with reckless and deliberate indifference to the rights and liberties of the public in general, of Plaintiff and Decedent, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

    a. Employing and retaining as police officers and other personnel, including Defendants Casciola, Taub and Durbin, who Defendants City and Nislet at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority, and for mistreating citizens by failing to follow written City Police Department's policies and constitutional mandates regarding unreasonable seizures and denial of medical care;

    b. Of inadequately supervising, training, controlling, assigning, and disciplining City Police Officers, and other City personnel, including Defendants Casciola, Taub and Durbin, who Defendant City and Nislet knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

    c. By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by Defendants Casciola, Taub and Durbin, who are City employees and police officers;

    d. failing to provide proper medical care and not take actions to worsen or exacerbate detainee/arrestee conditions, including Decedent;

    e. the negligent tactics and handling of the situation with Decedent, including improper and inadequate medical assessment of a detainee and failure to address repeated cries for help and assistance;

    f. the failure to provide/summon timely medical assistance to decedent;

    g. the failure to properly train, supervise, and discipline employees, including the Defendants Casciola, Taub and Durbin; and

66.     Defendants City and Nislet, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above.  Despite having knowledge as stated above, these defendants condoned, tolerated, and, through actions and inactions thereby, ratified such policies.  Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Decedent, Plaintiff, and other individuals similarly situated.

67.     By perpetuating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendants City and Nislet acted with intentional, reckless, and callous disregard for the life of Decedent and for Decedent's and Plaintiff's constitutional rights.  Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants City and Nislet were affirmatively linked to and were a significantly influential force behind the injuries of Decedent and Plaintiff.

68.     By reason of the aforementioned acts and omissions of Defendants City and Nislet, Plaintiff has suffered loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support of Decedent.

69.     The conduct of Nislet was malicious, wanton, oppressive, and accomplished with conscious disregard for Decedent's rights, entitled Decedent and Plaintiff to an award of exemplary and punitive damages.

70.     Accordingly, Defendants City and Nislet are each liable to Plaintiff for compensatory under 42 U.S.C. § 1983. Defendant Nislet is liable for punitive damages under this claim.  Plaintiff also seeks reasonable attorneys' fees under this claim. Plaintiff further seeks survival damages under this claim as a successor-in-interest to Decedent. Plaintiff also seeks wrongful death damages under this claim.

**FOURTH CAUSE OF ACTION**

**Deprivation of Life Without Due Process (42 U.S.C. § 1983)**

**(Against Defendants Casciola, Taub and Durbin and DOES 1-5)**

71.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 70 of this Complaint with the same force and effect as if fully set forth herein.

72.    The Defendants Casciola, Taub, Durbin and Does 1-5 acted under color of State law within the course and scope of their duties as law enforcement when they recklessly and deliberately indifferent to Decedent's serious medical needs. Defendants Casciola, Taub and Durbin knew or should have known that failure to provide timely medical treatment to Decedent could result in injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing Decedent great bodily harm and an agonizing death.

73.    Plaintiff and Decedent had a cognizable interest under the Substantive Due Process Clause of the Fourteenth Amendment of the United States Constitution, to be free from state actions that deprive of life, liberty or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's relationship with his mother.

74.    Defendants Casciola, Taub and Durbin and their agents, along with other undiscovered conduct, shocked the conscience, in that deliberation was practical and Defendants Casciola, Taub and Durbin and its agents acted with deliberate indifference to Decedent and Plaintiff's constitutional rights, and with the purpose to harm unrelated to any legitimate law enforcement objective.

75.    As a legal result of their conduct, Defendants Casciola, Taub and Durbin are liable for Plaintiff's injuries, either because they were integral participants in the deprivation of life without due process, or they failed to intervene to prevent those violations.

76.    As a direct and proximate result of Decedent and Plaintiff's conduct as alleged above, and other undiscovered negligent conduct, Decedent was caused to

suffer severe pain and suffering and ultimately lost her life.  Also, as a direct and proximate result of Decedent and Plaintiff's conduct as alleged above, Plaintiff has been deprived of love, companionship, comfort, care, assistance, protection, affection, society, and moral support of Decedent, and will continue to be so deprived for the remainder of his natural life.  Plaintiff has incurred other compensatory and incidental damages, including but not limited to funeral and burial expenses.

77.     Accordingly, Defendants Casciola, Taub and Durbin are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks reasonable attorneys' fees under this claim. Plaintiff further seeks survival damages under this claim as a successor-in-interest to Decedent. Plaintiff also seeks wrongful death damages under this claim.

## FIFTH CAUSE OF ACTION

### Negligence (Cal. Govt. Code § 820 and California Common Law)

(Survival and Wrongful Death Damages)

(Against All Defendants)

78.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 77 of this Complaint with the same force and effect as if fully set forth herein.

79.     At all times mentioned herein, the Defendants City, Casciola, Taub and Durbin, Nislet and Does 1-10 owed a duty of care to Decedent to provide for the safety of Decedent, including providing prompt and adequate medical care.

80.     Defendants City, Casciola, Taub and Durbin, Nislet and Does 1-10 breached their duty of care when they failed to provide prompt and timely medical care to Decedent while she was under their custody and ignoring repeated requests for help and water.  Said breach was the proximate cause of Decedent death since timely medical care would have prevented Decedent's death.

81.     As a direct and proximate result of Defendants City, Casciola, Taub and Durbin, Nislet and Does 1-10 conduct as alleged above, and other undiscovered

1  negligent conduct, Decedent was caused to suffer severe pain and suffering and
2  ultimately lost her life.  Also, as a direct and proximate result of Defendants City,
3  Casciola, Taub and Durbin, Nislet and Does 1-10  conduct as alleged above, Plaintiff
4  has been deprived of love, companionship, comfort, care, assistance, protection,
5  affection, society, and moral support of Decedent, and will continue to be so deprived
6  for the remainder of his natural life.  Plaintiff has incurred other compensatory and
7  incidental damages, including but not limited to funeral and burial expenses.

8      82.    Defendants City are vicariously liable for the wrongful acts of
9  Defendants Casciola, Taub and Durbin, Nislet and Does 1-10  pursuant to section
10  815.2(a) of the California Government Code, which provides that a public entity is
11  liable for the injuries caused by its employees within the scope of the employment if
12  the employee's act would subject him or her to liability.

13      83.    Plaintiff brings this claim as successor-in-interest to the Decedent and
14  seeks wrongful death and survival damages for the violation of Decedent's rights.

15

16                    **SIXTH CAUSE OF ACTION**
17              **Failure to Summon Immediate Medical Care**
18        **(Violation of California Government Code section 845.6)**
19                (Survival and Wrongful Death Damages)
20          (Against Defendants City, Casciola, Taub and Durbin, and Does 1-5)

21      84.    Plaintiff repeats and re-alleges each and every allegation in paragraphs
22  1-88 of this Complaint with the same force and effect as if fully set forth herein.

23      85.    Defendants City, Casciola, Taub and Durbin, and Does 1-5 knew or had
24  reason to know Decedent was in need of immediate medical attention failed to take
25  reasonable action to summon such medical care.

26      86.    Decedent suffered harm and died, and Plaintiff suffered harm, as a direct
27  and proximate result of the conduct of Defendants Casciola, Taub and Durbin as
28  alleged above.

87.     Plaintiff asserts this cause of action against all Defendants pursuant to California Government Code section 845.6. Under section 845.6 "both public employees and public entities may be liable when an employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care".

88.     Defendants City are vicariously liable for the wrongful acts of Defendants Casciola, Taub, Durbin and Does 1-5 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

89.     Further, Plaintiff is informed and believes and thereon alleges that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless and/or were done in willful and conscious disregard of Decedent and Plaintiff's rights, welfare and safety, justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial against the individual Defendants.

90.     Plaintiff brings this claim as successor-in-interest to the Decedent and seeks wrongful death and survival damages for the violation of Decedent's rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered in his favor against Defendants and each of them in the causes of action herein as follows:

1.     For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in an amount to be proven at trial;

2.     General Damages (non-economic damages) in a sum according to proof.

3.     Special Damages (economic damages) in a sum according to proof;

1      4.     For punitive damages in an amount to be proven at trial (against
2               individual defendants only);

3      5.     Funeral and burial expenses;

4      6.     Loss of love, companionship, affection, training, guidance, comfort,
5               care, assistance, protection, affection, society, moral support, guidance,
6               and solace in a sum according to proof;

7      7.     Reasonable attorneys' fees and costs under 42 U.S.C. §§ 1983 and 1988;

8      8.     Pre-judgment interest as allowed by law;

9      9.     For costs of suit herein; and

10     10.    For such other and further relief as the Court may deem proper.

Dated: November 5, 2019.         WEST COAST TRIAL LAWYERS, APLC

By: _____

                     H. Dean Aynechi, Esq.
                     Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury.

Dated: November 5, 2019.         WEST COAST TRIAL LAWYERS, APLC

By: _____

                     H. Dean Aynechi, Esq.
                     Attorneys for Plaintiff

COMPLAINT FOR DAMAGES