UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.K.J., individually, and successor in interest to the Deceased, ALEAH JENKINS, by and through his guardian-ad-litem, JEREMY HILLYER,<br><br>                                      Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO et al.,<br><br>                                      Defendants. | Case No.:  19-CV-2123-CAB-RBB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>[Doc. No. 17] |

This matter is before the Court on Defendants' motion to dismiss the first amended complaint ("FAC").  The motion has been fully briefed, and the Court deems it suitable for submission without oral argument.  For the following reasons, the motion is granted and the FAC is dismissed with prejudice.

## I.   Procedural Background

In the original complaint, Plaintiff J.K.J., a minor, sought damages from the City of San Diego, the Police Chief of the San Diego Police Department, and three San Diego police officers arising out of the death of Plaintiff's mother, Aleah Mariah Jenkins.  The original complaint, filed on November 5, 2019, asserted six claims—four under 42 U.S.C. § 1983, and two under California state law.  The four § 1983 claims were labeled: (1) unreasonable search and seizure—detention and arrest; (2) unreasonable search and

1

seizure—denial of medical care; (3) municipal liability for unconstitutional custom or policy; and (4) deprivation of life without due process. The complaint also asserted a claim for negligence under California Government Code § 820 and California common law, and a claim for failure to summon immediate medical care under California Government Code § 845.6.

Defendants moved to dismiss the original complaint, and the Court granted the motion. In its order, the Court dismissed with prejudice the four federal claims, each brought under 42 U.S.C. § 1983, to the extent they were intended to be wrongful death claims seeking damages for Plaintiff J.K.J.'s injuries, and dismissed them without prejudice to the extent they sought survival damages on behalf of Ms. Jenkins.[1] The Court also declined to exercise supplemental jurisdiction over the state law claims. The order gave Plaintiff leave to file an amended complaint asserting only survival claims under § 1983.

On March 12, 2020, Plaintiff filed the FAC asserting three § 1983 claims: (1) unreasonable search and seizure—denial of medical care; (2) municipal liability for unconstitutional custom, practice, or policy; and (3) deprivation of live without due process. [Doc. No. 16.] The first and third claims are asserted against San Diego police officers Jason Taub and Lawrence Durbin. The second claim is asserted against the City. These remaining defendants now move to dismiss the FAC for failure to state a claim.

## II.    Allegations in the FAC

Although the FAC contains a detailed written description of the interactions between Officers Taub and Durbin and Ms. Jenkins on November 27, 2018, the allegations of what happened that day are merely a characterization of the publicly available video of Officer Durbin's bodycam recording of the incident. Footnote 1 to the FAC incorporates the bodycam footage into the FAC and includes a link to a video of that footage.[2] That video,

---

[1] The opinion dismissed the sole claim against San Diego Police Chief David Nisleit with prejudice.
[2] *See* https://www.youtube.com/watch?v=-cx5dQ_u04k&has_verified=1

which the Court watched in its entirety, renders any written allegations describing what occurred on November 27, 2018, somewhat superfluous because the Court is not "required to accept as true allegations that contradict exhibits attached to the Complaint . . . ." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Generally, the video is consistent with the allegations in the original complaint that the Court recounted in its order dismissing that complaint. Obviously, the video provides a more comprehensive account of what allegedly happened on November 27, 2018, but, as discussed below, none of these additional details are material or significant such that they remedy the defects of the original complaint.

### III. Discussion[3]

#### A. Standing To Assert Survival Claims

The original complaint categorized each of the six claims as being both a survival claim and a wrongful death claim. The Court, however, dismissed the § 1983 claims with prejudice to the extent they were pled as wrongful death claims because "'wrongful death' actions by a surviving relative cannot be brought under Section 1983, as constitutional rights cannot be vicariously asserted." *Hernandez-Cortina v. Cty. of Riverside*, No. EDCV1801579DDPSPX, 2019 WL 403957, at *3 (C.D. Cal. Jan. 30, 2019). Although the FAC could be construed as continuing to seek wrongful death damages for injuries suffered by J.K.J.,[4] for the purposes of this motion, the Court assumes that J.K.J. intends to assert only survival claims under section 1983 and recover only whatever damages Ms. Jenkins incurred as a result of any violation of her constitutional rights.

---

[3] The same legal standards on a motion to dismiss that the Court set out in its order dismissing the original complaint apply here.

[4] For example, the caption to the FAC continues to state that J.K.J. is suing "individually, and [as] successor in interest to the Deceased, Aleah Jenkins," and alleges that "Plaintiff has been deprived of love, companionship, comfort, care, assistance, protection, affection, society, and moral support of Decedent, experienced emotional distress and mental anguish and will continue to be so deprived for the remainder of his natural life."  [Doc. No. 16 at ¶¶ 74, 82, 90.]

As explained in the Court's prior order, "[i]n a survival action, a decedent's estate may recover damages on behalf of the decedent for injuries that the decedent has sustained." *Davis v. Bender Shipbuilding & Repair Co.*, 27 F.3d 426, 429 (9th Cir.1994)). "A claim under 42 U.S.C. § 1983 survives the decedent if the claim accrued before the decedent's death, and if state law authorizes a survival action." *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1093 n.2 (9th Cir. 2006). "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1228–29 (9th Cir. 2013) (citation omitted).

"California's statutory requirements for standing to bring a survival action are stated under California Code of Civil Procedure § 377.30: 'A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest . . ., and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest.'" *Hayes*, 736 F.3d at 1229; *see also Tatum*, 441 F.3d at 1093 n.2 ("Where there is no personal representative for the estate, the decedent's 'successor in interest' may prosecute the survival action if the person purporting to act as successor in interest satisfies the requirements of California law. . . .").

Pursuant to California Code of Civil Procedure § 377.32, a survival action in California must be accompanied by an affidavit including, among other things, facts supporting statements that the affiant is either the decedent's successor in interest or is authorized to act on the successor in interest's behalf, in the action. Cal. Civ. Proc. Code § 377.32(5). For the purposes of filing a survival action, the successor in interest "means the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action." Cal. Civ. Proc. Code § 377.11. In the order dismissing the original complaint, the Court found that J.K.J. had not complied with these requirements for bringing a survival action.

4

With the FAC, Plaintiff filed a declaration from Jeremy Hillyer, Plaintiff's general guardian and representative in this action, stating that: (1) J.K.J. is Ms. Jenkins' biological son; (2) "no proceeding is now pending in the State of California for the administration of the Estate of Aleah Jenkins"; (3) "J.K.J. is the successor in interest to Aleah Jenkins, as defined in Section 377.11 of the Code of Civil Procedure"; and (4) "[n]o other person has a superior right to commence the above-entitled proceeding or to be substituted for Aleah Jenkins in the above entitled proceeding." [Doc. No. 15.]  Along with J.K.J.'s opposition to the motion to dismiss the FAC, a second declaration from Mr. Hillyer was filed that added a statement that Ms. Jenkins died intestate and that J.K.J. "succeeds to the decedent's interest in the action or proceeding."  [Doc. No. 21.]  Although it appears that, taken together, these declarations contain all the specific language required by § 377.32(5), they are still inadequate.

Section 377.32(5) requires the declaration to include "facts in support" of statements that the plaintiff is the successor in interest and succeeds to the decedent's interest in the lawsuit.  Here, the only "fact" in the declaration that supports these statements is that J.K.J. is Ms. Jenkins' biological son.  If J.K.J. were Ms. Jenkins' only child, the Court might be satisfied that the declarations are sufficient and that J.K.J. has standing to bring a survivor action by himself.  That is not the situation here, however, as there is no dispute that Ms. Jenkins had two other biological children.  Moreover, Plaintiff rightly concedes that these other children have an equal right as a successor in interest to the survival claims asserted in this action.  [Doc. No. 19 at 15.]  *See generally* Cal. Probate Code § 6402 (stating that an intestate estate passes "to the issue of the decedent, the issue taking equally if they are all of the same degree of kinship to the decedent").

Based on the foregoing, if the FAC could otherwise avoid dismissal, the Court would solicit briefing from the parties concerning whether Ms. Jenkins' other children are required parties who must be joined under Federal Rule of Civil Procedure 19.  Such briefing is unnecessary here because, as discussed below, the FAC does not remedy the

deficiencies of the original complaint and is dismissed with prejudice for failure to state a claim.

### B.    Denial of Medical Care

As explained in the order dismissing the original complaint, a claim for denial of medical care by a pretrial detainee arises out of the Fourteenth Amendment's Due Process Clause.  *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc).[5]  Thus, the Court again analyzes whether the FAC states a claim for deliberate indifference to Jenkins' medical needs under the Fourteenth Amendment.  For ease of reference, the explanation of that standard from the prior dismissal order is repeated below.

"In the Ninth Circuit, the test for deliberate indifference consists of two parts."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The plaintiff "must first show a 'serious medical need' by demonstrating that 'failure to treat [plaintiff's] condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (internal quotation marks omitted) (citing *Jett*, 439 F.3d at 1096).[6]  Upon demonstration of a serious medical need, the plaintiff must then show that the defendant's response was deliberately indifferent.  *Id.* at 786.  The deliberate indifference standard is an objective one.  *Gordon v. Cty. of Orange*, 888 F.3d

---

[5] In the order dismissing the original complaint, the Court rejected Plaintiff's argument that this claim should be premised on a violation of Jenkins' Fourth Amendment rights applied to state actors by the Fourteenth Amendment.  In opposition to the motion to dismiss the FAC, Plaintiff once again argues that this claim arises under the Fourth Amendment based on *Tatum v. City and Cty. of S.F.*, 441 F.3d 1090, 1098-99 (9th Cir. 2006), and that the Court should apply a reasonableness standard to Defendants' actions. While the Court continues to find that the Fourteenth Amendment deliberate indifference standard governs this claim, the claim fairs no better under a reasonableness standard.  Because it was not apparent that Ms. Jenkins had a serious or urgent medical need until Officer Durbin discovered that she appeared to have stopped breathing, any failure to summon emergency medical assistance before then was objectively reasonable.

[6] Although *Edmo* and *Jett* consider claims for denial of medical care in violation of a prisoner's Eighth Amendment rights, the analysis is identical to a claim for a pretrial detainee's claim for denial of medical care in violation of her Fourteenth Amendment due process rights.  *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) ("Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, however, we apply the same standards.").

1118, 1124–25 (9th Cir. 2018) (citing *Castro*, 833 F.3d at 1070); *cf. Narcisse v. Tafesse*, No. 5:16-CV-00682-EJD, 2019 WL 4417635, at *5 (N.D. Cal. Sept. 16, 2019) (holding that *Gordon* focused only on the requisite state of mind for a defendant's conduct and did not eliminate the requirement that plaintiffs also show the existence of a serious medical need).   The Ninth Circuit recently enumerated the objective deliberate indifference components as:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon*, 888 F.3d at 1125.  The Ninth Circuit further explained:

> "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" [*Castro*, 833 F.3d] at 1071 (quoting *Kingsley*, 135 S.Ct. at 2473; *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* (quoting *Daniels*, 474 U.S. at 330–31, 106 S.Ct. 662). Thus, the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

*Id.*  "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015); *see also Neuroth v. Mendocino Cty.*, No. 15-CV-03226-RS, 2018 WL 4181957, at *10 (N.D. Cal. Aug. 31, 2018) ("Deliberate indifference claims, however, cannot be evaluated on the basis of 20/20 hindsight.").

### 1.  Deliberate Indifference Based on Actions at Initial Traffic Stop

The order dismissing the original complaint noted that the complaint grouped the three defendant officers who participated in the initial traffic stop together and alleged that

they are all equally liable for five of the six claims asserted.  Yet, "[l]iability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).  As the Court noted, Officers Nicholas Casciola and Jason Taub were involved only in the initial traffic stop, and the only allegations in the original complaint concerning Ms. Jenkins' medical condition while Officers Casciola and Taub were present in some capacity was that she vomited on herself and said it was because she was pregnant and sick.  The Court concluded that these outward signs of sickness, in light of Ms. Jenkins' explanation and Officer Durbin telling them "don't worry about it" [Doc. No. 1 at ¶ 30], did not, without more, create a plausible claim that Officer Casciola or Officer Taub violated Jenkins' constitutional rights or acted negligently for not immediately obtaining medical care for her.

The FAC no longer names Officer Casciola as a defendant, but it still asserts claims against Officer Taub, and alleges that both he and Officer Durbin were deliberately indifferent to Ms. Jenkins' medical needs based on what happened at the traffic stop alone.  Yet, the video recording does not indicate that Officer Taub had any greater role than what was alleged in the original complaint.  Nor does it contain any additional details that, assuming their truth, could demonstrate that Taub, who was only involved in the traffic stop itself, or Durbin, based on what he observed at the traffic stop, were deliberately indifferent to Ms. Jenkins' serious medical needs.

The FAC alleges that Taub (and Durbin) should have known when Ms. Jenkins vomited that she was "overdosing and/or withdrawing from drugs" because they "both had knowledge that the other occupants of the vehicle had prior arrests and/or convictions for narcotics sales, found a saran wrap-like plastic (commonly used for narcotics sale) in the car, and had knowledge of Decedent's warrant for amphetamine."  [Doc. No. 17 at ¶ 37.] The allegations in the FAC and the video itself, however, demonstrate that the officers took

8

that information into consideration and asked her if she was "detoxing," which she denied, attributing her vomiting to being pregnant and sick.  Considering that during the traffic stop: (1) Ms. Jenkins had been, in Plaintiff's own words and as reflected in the video viewed by the Court, "responsive . . . and showed no signs of distress or a medical emergency" [Doc. No. 16 at ¶ 27] prior to vomiting; (2) Ms. Jenkins did not continue to vomit after the first instance; (3) Ms. Jenkins did not lose consciousness and was coherent enough to ask for water and a napkin to clean herself; (4) Ms. Jenkins specifically denied that she was "detoxing" when asked; (5) Ms. Jenkins never requested medical care; and (6) no drugs were found during the traffic stop, only 20/20 hindsight could lead to a finding that a reasonable officer would have known that Ms. Jenkins was overdosing on drugs at that point.  Accordingly, the FAC does not state a claim for denial of medical care based on what had occurred up to the point that Officer Durbin left the traffic stop with Ms. Jenkins in the back seat of his patrol car.  Because Officer Taub had no more involvement with Ms. Jenkins after this point, this claim is dismissed in its entirety as to him.  *See generally Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.").

### 2.    Deliberate Indifference By Officer Durbin

Like the original complaint, the FAC merely summarizes and characterizes Officer Durbin's bodycam footage from the point he left the traffic stop with Ms. Jenkins in the backseat of his patrol car.  The FAC, however, also incorporates the bodycam footage itself.  Upon review of the video, the Court concludes that the summary provided in the original complaint was complete and accurate.  The FAC does not add allegations that remedy the deficiencies that warranted dismissal of this claim as to Officer Durbin in the original complaint.

Neither Plaintiff's summary from the FAC nor the bodycam video itself state a plausible claim that Officer Durbin was deliberately indifferent to Ms. Jenkins' serious medical needs.  A reasonable officer would not have known that Ms. Jenkins had a serious medical need that warranted immediate medical care prior to when she stopped breathing.

Indeed, in one of the last interactions between Ms. Jenkins and Officer Durbin, Ms. Jenkins clearly responded, "Yes, please," when he asked her if she wanted water.  Moreover, when Officer Durbin discovered that Ms. Jenkins had stopped breathing a short time later, he took immediate action, including summoning medical assistance and performing CPR.

Plaintiff contends that a reasonable officer in Officer Durbin's position would have recognized that Ms. Jenkins required immediate medical assistance for a drug overdose when confronted with this situation, and that therefore Officer Durbin was deliberately indifferent to her condition.  The tragic end of this encounter, however, cannot dictate whether the officer's actions or inactions leading up to it were unreasonable.  The reasonableness of an officer's actions and whether he acted with deliberate indifference is viewed by what he knew at the time, not on the ultimate outcome of the event.  *Kinglsley*, 135 S.Ct. at 2473.

The circumstances that led to Ms. Jenkins being detained did not arise from a drug arrest, no drugs were found at the traffic stop, and she did not appear to be under the influence of drugs and affirmatively stated she had not ingested any drugs and was not detoxing.  During her transport, Ms. Jenkins increasingly expressed distress, but never indicated she had ingested drugs.  In response to the officer's inquiries about her condition, Ms. Jenkins stated she did not want to go to jail.  Until the moment when Ms. Jenkins stopped breathing, it was not apparent that Ms. Jenkins was overdosing on drugs or that she was in need of emergency medical care.

The fact that Ms. Jenkins died of a drug overdose in these circumstances does not support a finding that Officer Durbin violated Ms. Jenkins' constitutional rights by not summoning emergency medical assistance immediately in response to her complaints.  The officer's decisions are viewed as the circumstances developed and the lack of evidence that she had taken drugs or other evidence that her complaints reflected a serious medical condition make his actions objectively reasonable.  Further his actions when her condition became acute, to provide emergency CPR and immediately seek medical aid reflect that he was not deliberately indifferent to her needs.  Accordingly, because the FAC does not state

a plausible claim that Officer Durbin was deliberately indifferent to a serious medical need of Ms. Jenkins, the motion to dismiss this claim is granted.

### C.      Deprivation of Life Without Due Process

Defendants argue in their motion that this claim is duplicative of the denial of medical care claim.  In the opposition, Plaintiff does not argue otherwise, stating only that claim is governed by the same standards as the denial of medical care claim.  Accordingly, this claim is dismissed for the same reasons as the denial of medical care claim.

### D.      Qualified Immunity

Officers Durbin and Taub also argue that they are entitled to qualified immunity from the claims against them.  "Qualified immunity shields government actors from civil liability under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Castro*, 833 F.3d at 1066 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  It "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Because "[i]t is 'an *immunity from suit* rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (*emphasis* in original).  To that end, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

To determine whether Officers Durbin and Taub are immune from suit, the court must consider "whether [their] conduct violated a constitutional right, and if so, whether that right was clearly established at the time of the event in question." *Mueller*, 576 F.3d at 993 (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).  As discussed above, the FAC does not state a claim for any violation of Ms. Jenkins' constitutional rights.  Thus, the analysis could end here with a finding that Officers Durbin and Taub have qualified immunity.  Moreover, even assuming that the FAC does state a claim against Officers

Durbin and Taub, they would be entitled to immunity because the constitutional rights in question were not clearly established at the time of the traffic stop of Ms. Jenkins.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.  In other words, the right's "contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1092–93 (9th Cir. 2013) (*quoting Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Mueller*, 576 F.3d at 994 (*quoting Saucier*, 533 U.S. at 201).  "The standard is an objective one that leaves 'ample room for mistaken judgments.'"  *Id.* at 992 (quoting *Malley*, 475 U.S. at 343).

"[T]he plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'" *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000).  "[C]learly established law should not be defined at a high level of generality."  *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (internal quotation marks and citation omitted).  To the contrary, "the clearly established law must be 'particularized' to the facts of the case." *Id.*  Although there need not be "a case directly on point, [] existing precedent must have placed the statutory or constitutional question beyond debate." *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) (quoting *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.").

Applying this authority to the circumstances here, if a reasonable officer could have believed that Ms. Jenkins was not overdosing and did not have a serious medical need warranting immediate medical care based on information available at the time, qualified immunity shields Officers Durbin and Taub from liability.  *See Hunter*, 502 U.S. at 227 ("Our cases establish that qualified immunity shields agents Hunter and Jordan from suit

19-CV-2123-CAB-RBB

for damages if 'a reasonable officer could have believed [Bryant's arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.'") (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

Plaintiff fails to satisfy his burden to demonstrate that Officers Durbin and Taub violated Ms. Jenkins' clearly established constitutional rights based on the facts available to them at the time.  He cites to no controlling precedent involving similar circumstances, and none of the cases he cites, consisting of unpublished dispositions from the sixth and tenth circuits, respectively, and a handful of district court opinions from around the country, place it beyond debate that in the specific circumstances here, Officers Durbin and Taub should have known that Ms. Jenkins was overdosing on drugs and that the failure to summon emergency medical attention violated any of Ms. Jenkins' constitutional rights.  Accordingly, even assuming the FAC states claims against Officers Durbin and Taub for denial of medical care and deprivation of life without due process, Officers Durbin and Taub would be entitled to qualified immunity.

### E.    Municipal Liability

The FAC also re-asserts the claim against the City for the alleged constitutional violations that allegedly resulted in Ms. Jenkins' death.  "Neither a municipality nor a supervisor, however, can be held liable under § 1983 where no injury or constitutional violation has occurred."  See *Jackson v. City of Bremerton*, 268 F.3d 646, 653–54 (9th Cir. 2001) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).  Thus, because the FAC fails to state a claim for violation of Ms. Jenkins' constitutional rights, this claim fails as well.  Moreover, even assuming the complaint does state a claim for violation of Jenkins' constitutional rights against Officers Durbin or Taub, this claim would be subject to dismissal as discussed below.

Following *Monell v. Department of Social Services*, 436 U.S. 658 (1978), "it is well-settled that in claims brought under 42 U.S.C. § 1983, municipalities are liable only for constitutional violations resulting from an official 'policy or custom.'" *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1216 (9th Cir. 1996) (quoting *Monell*,

436 U.S. at 694).  "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell*, 436 U.S. at 691 (*emphasis* in original).  "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability."  *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 415 (1997).  "[A] municipality sued under § 1983 is not subject to vicarious liability for the acts of its agents."  *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001).

"The 'first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'"  *Castro*, 833 F.3d at 1075 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989)).  "[I]t is not enough for a § 1983 plaintiff to merely identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."  *Brown*, 520 U.S. at 404.  "A plaintiff cannot prove the existence of a *municipal* policy or custom based on solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee."  *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233-34 (9th Cir. 1989); *see also City of Canton*, 489 U.S. at 391 ("[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.").

The FAC does not remedy the defects from the original complaint with respect to allegations of a specific municipal policy or custom that caused any of the constitutional violations (inadequately) alleged in the complaint.  The vague purported "policies" listed in paragraph 77 of the FAC are identical to those listed in the original complaint and are therefore inadequate for the same reasons stated in the Court's opinion dismissing the original complaint.  The addition of allegations concerning the training Officers Durbin and Taub received in accordance with Peace Officers Standards and Training ("POST") and the San Diego Police Department Policy Manual are not sufficient to save this claim

14

from dismissal.  [Doc. No. 16 at ¶¶ 38, 39, 48, 49, 60, 79, 80.] To the contrary, these allegations undermine this claim, because they imply that the individual officers did not follow San Diego Police Department policy and their training.  In other words, City policy was not the "moving force" behind Ms. Jenkins' injuries because, according to the FAC, had the individual defendants complied with the policies in question, Ms. Jenkins' constitutional rights would not have been violated.  Accordingly, even if the FAC stated a plausible claim for violation of Jenkins' constitutional rights, the *Monell* claims would be subject to dismissal.

## IV.   Disposition

For the foregoing reasons, it is hereby **ORDERED** that the motion to dismiss is **GRANTED**.  Further, the incorporation of the bodycam footage of the incident into the FAC renders any amendment futile.  Accordingly, the FAC is **DISMISSED WITH PREJUDICE**.

It is **SO ORDERED**.

Dated:  May 18, 2020

_____
Hon. Cathy Ann Bencivengo
United States District Judge